JOHNSON v. STEBBINS-THOMPSON REALTY COMPANY et al., Appellants.

Division Two, November 17, 1903.

1. **Appellate Practice: IN EQUITY CASES.** In equity cases the Supreme Court will fully review the facts upon which the decree is predicated, to ascertain if the finding of facts is in keeping with good conscience; but in so doing, it will not overlook the rule that due consideration is to be given to the finding of the chancellor who heard the witnesses, and had the opportunity of observing them while testifying, and who is presumed, in reaching his final conclusions, to have applied the well-recognized rules of evidence in determining the weight to be attached to their testimony.

2. **Fraudulent Conveyance.** A conveyance by a corporation to one of its directors of real estate, without consideration, is voluntary, and fraudulent as to the company's creditors. And if the evidence shows no consideration to have been paid the company for its deed, it will on the suit of a judgment creditor be set aside.

3. **———: CONCLUSIVENESS OF JUDGMENT AGAINST CORPORATION.** Where the judgment creditor of a corporation is suing to have set aside a deed made by it to its president as being in fraud of its creditors, the defendant president is chargeable with the acts of negligence of the corporation in not making the meritorious defense which could have been made to the suit of the creditor which resulted in a judgment against the company, if he had knowledge of its

pendency. And having such knowledge and having failed to make the. defense which would have defeated that judgment, he can not, at the suit of the judgment creditor therein, to have the deed by the company to himself set aside in an equitable proceeding, as being in fraud of the right of creditors, defend on the ground that that judgment was founded on a note which was not supported by any consideration and was never delivered by its makers.

4. ———-: ———: QUESTIONED BY VOLUNTARY GRANTEE. A voluntary grantee of a conveyance from an insolvent debtor is precluded by that fact, in a suit by a creditor to have the deed set aside, from questioning the validity of the creditor's judgment against the debtor, and from the introduction of evidence tending to show the invalidity of the indebtedness upon which the judgment was based. Of course if the judgment itself was obtained by fraud or artifice, he can show that fact.

5. ———: VOLUNTARY GRANTEE: PRIVY TO FACTS. A voluntary grantee, with notice of the facts, is a privy with the judgment debtor, in the making of a deed conveying the insolvent debtor's real estate.

Appeal from St. Louis County Circuit Court.—*Hon. Jno. W. McElhinney*, Judge.

AFFIRMED.

*Campbell & Thompson* for appellants.

(1) The burden of proof was on plaintiff. Bank v. Worthington, 145 Mo. 100. (2) The deed was made by sufficient authority of the board of directors, without which plaintiff would have no standing in court to prosecute this character of action. Swentzel v. Inv. Co., 168 Mo. 279. (3) The deed was not voluntary or fraudulent, and is supported by a consideration. (4) Judson M. Thompson was a third person and not a privy in any respect to Stebbins-Thompson Realty Company under the judgment rendered in favor of plaintiff against the Stebbins-Thompson Realty Company in the circuit court of the city of St. Louis, and should have been permitted to introduce evidence to show that that judgment was founded upon a note upon which the name of Stebbins-Thompson Realty Com-

pany was indorsed by Lovell W. Stebbins without authority, and not in the course of its business, and that such an indorsement was *ultra vires* of the corporation and that the judgment was not binding on him, from the fact that he was either a director or stockholder of said Stebbins-Thompson Realty Company. Ward v. Joslin, 186 U. S. 142. (5) The judgment rendered in favor of Johnson against Stebbins-Thompson Realty Company, was not binding upon Judson M. Thompson because he was the grantee of the Stebbins-Thompson Realty Company, as there was no privity between him and the grantor. 2 Freeman on Judgments, 335; John v. Pattee, 55 Iowa 665; Gallagher v. Hebrew Congregation, 35 La. 829; Stoutimore v. Clark, 70 Mo. 471; Freeman on Judgments, sec. 162; Greenleaf, Evidence, sec. 189; Lipscomb v. Postell, 38 Miss. 489; Black on Judgments, sec. 549; Hart v. Moulton, 104 Wis. 349; Chard v. Holt, 139 N. Y. 30; Benz v. Tarr, 3 Kan; Dull v. Blackman, 169 U. S. 243; Travis v. Durham, 5 T. B. Monroe 397; Clark v. Foycroft, 6 Greenl. (Me.) 309. (6) The court erred in not permitting defendants to introduce evidence tending to show that plaintiff Johnson came into court tainted and covered with fraud, in surreptitiously and fraudulently obtaining possession of this note, and that his hands were unclean, because, to such a plaintiff, a court of equity ought not to lend its ear. 11 Am. and Eng. Ency. Law, pp. 162-3; Hogg's Equity Principles, sec. 324, p. 430; Pomeroy's Equity (2 Ed.), sec. 397; Bispham's Principles of Equity, sec. 42, p. 61.

*W. B. Homer* for respondent.

(1) The deed from J. M. Thompson was fraudulent and void and should be set aside. (a) It was void because it was without consideration and voluntary. And it was fraudulent and void because it was made for the purpose of defrauding the creditors of

said corporation and especially plaintiff. State to use v. O'Neil, 151 Mo. 88; State ex rel. v. Hope, 102 Mo. 410; National Tube Works Co. v. Machine Co., 118 Mo. 365; Woodson v. Carson, 135 Mo. 521; Imhoff v. McArthur, 146 Mo. 378; State ex rel. v. Hardware Co., 147 Mo. 374; Schufeldt v. Smith, 131 Mo. 290; Pitman v. Elmore, 93 Mo. App. 592. (b) The deed was void and invalid because it was not executed by authority of the corporation: first, because there was no notice given of the special meeting; second, because there was not a proper quorum present, and no legal vote for the making of the deed; third, the president could not convey the property to himself. Foster v. Planing Mill Co., 92 Mo. 79; Hill v. Coal & Min. Co., 119 Mo. 23; Calomet Paper Co. v. Printing Co., 144 Mo. 331; Remmers v. Seky, 70 Mo. App. 364; Butts v. Wood, 37 N. Y. 317; Funsten v. Commission Co., 67 Mo. App. 563; Davis Mill Co. v. Bennett, 39 Mo. App. 460; Ward v. Davidson, 89 Mo. 454; Van Hood v. Summerville Mfg. Co., 5 N. J. Eq. 168; Ice Co. v. Reed, 2 How. Pr. (N. S.) 253; Railroad v. Adams, 87 Tex. 125; Copeland v. Bacon, 54 Hun 237; Jones v. Morrison, 31 Minn. 140; Wright v. Bank, 52 N. J. Eq. 392; 7 Thompson on Corporations, sec. 8478; vol. 3, sec. 3929; McKeag v. Collins, 87 Mo. 164; Hall v. Bank, 145 Mo. 427; Miner v. Ice Co., 93 Mich. 110; Carter v. Salmon River Co., 130 Cal. 345; State v. Perkins, 90 Mo. App. 603. (2) The president of a corporation, having charge of the litigation, is bound by a judgment rendered against the corporation, and the same is conclusive evidence against him of the debt, and he can not attack it unless he can show that the judgment against the corporation was concocted in fraud, and that the fraud was practiced in the very act of obtaining the judgment. Nichols v. Stevens, 123 Mo. 115; Neun v. Building & Loan Assn., 149 Mo. 80; State ex rel. v. St. Louis, 145 Mo. 567; Wood v. Ensel, 63 Mo. 193; Strong v. Ins. Co., 62 Mo. 295; Nat. Foundry Co. v. Oconto Water Wks., 68 Ful.

1006; Guerney v. Moore, 131 Mo. 650. (3) A purchaser of real property, who holds under a judgment debtor, can not impeach the judgment upon other grounds than those which would have entitled the judgment debtor to impeach it. Swihart v. Shaun, 24 Ohio St. 432; Burgess v. Simonson, 45 N. Y. 225; Carpenter v. Osborne, 102 N. Y. 553; Pickett v. Pipkin, 64 Ala. 520; Sawyer v. Moyer, 109 Ill. 461; Sidensparker v. Sidensparker, 52 Me. 527; Strong v. Lawrence, 58 Iowa 55; Scott v. Wagon Co., 48 Ind. 76; Faber v. Matz, 86 Wis. 370; Ferguson v. Kumler, 11 Minn. 104; Mfg. Co. v. Schaach, 10 S. Dak. 511; Starr v. Starr, 1 Ohio 321; Decker v. Decker, 108 N. Y. 128; Candee v. Lord, 2 N. Y. 269; Reid v. Spoon, 66 N. Car. 416; Zell v. Soper, 75 Mo. 460; Merry v. Freeman, 44 Mo. 518; Wiltse v. Flack, 87 S. W. 729; R. S. Iowa, sec. 3802; Bowen v. Wilson, 64 Ill. App. 73; R. S. Illinois, chap. 77, sec. 1; State ex rel. v. St. Louis, 145 Mo. 567.

## STATEMENT.

FOX, J.—"This case has been before this court on an appeal by James B. Johnson from a judgment rendered against him in the circuit court of the county of St. Louis, and which is reported in 167 Mo. 325.

"The case at that time was not orally argued on behalf of the then respondents.

"It is a suit in equity by plaintiff, a judgment creditor of the defendant, Stebbins-Thompson Realty Company, a corporation, to set aside a deed made on the 20th of February, 1897, by that corporation, to a tract of land therein described, situated in the county of St. Louis, State of Missouri, to Judson M. Thompson, appellant, upon the ground that it was a voluntary conveyance, and a fraud on the creditors of the realty company, especially the plaintiff.

"The petition alleges that the defendant on November 25, 1896, obtained a judgment in the circuit

court of the city of St. Louis, against the Stebbins-Thompson Realty Company, for the sum of $1,936.21; that an execution issued out of the circuit court of the city of St. Louis, and was returned *nulla bona* February 1, 1897; that at the date of rendering the judgment aforesaid, defendant, the realty company, was the owner of certain parcels of land in St. Louis county, in the petition described; that on or about the 20th day of February, 1897, the realty company, with a view and intent to hinder, delay and defraud its creditors, and especially the plaintiff, conveyed said lands to the defendant Judson M. Thompson, for the pretended consideration of $1,000; that said defendant, Judson M. Thompson, immediately upon the execution and delivery of said deed, took possession of the property, and has ever since been in possession; that no consideration passed to the realty company, but that the conveyance was a voluntary one, and without consideration, and made for the purpose of hindering, defrauding and delaying the creditors of the realty company, of which purpose the said Judson M. Thompson was fully cognizant at the time said conveyance was made; that at the time said J. M. Thompson was president of the realty company, and as such conveyed the land to himself without the authority of the board of directors; that on the 18th day of March, 1897, an execution was issued out of the circuit court of the city of St. Louis upon said judgment, directed to the sheriff of the county of St. Louis, and said sheriff levied upon the said real estate, and having advertised the same in accordance with law, on the 7th day of June, 1897, sold it at public auction to the plaintiff under said execution, and on the 25th day of June, 1897, the sheriff acknowledged the deed to the plaintiff in open court; that on September 23, 1897, J. M. Thompson made an affidavit that the corporation was on the 22d day of September, 1897, by a majority vote of its stockholders, duly dissolved, which affidavit was on the 24th day of

September, filed in the office of the Secretary of State; that on said 22d day of September, the said directors of the said realty company were Judson M. Thompson, Frank C. Thompson and Lovell W. Stebbins; and the bill then prayed that the conveyance from the realty company to Judson M. Thompson, be adjudged fraudulent, and void as against the plaintiff, and be set aside, and that said property be declared to be the property of plaintiff, James B. Johnson, and defendant be enjoined and restrained from selling or disposing of the property.

"The answer of Judson M. Thompson and Frank C. Thompson, two of the trustees of the former realty company, set forth that the realty company was dissolved on the 24th of September, 1897. They admitted that on the 25th of November, 1896, plaintiff obtained a judgment against the realty company, in the circuit court of the city of St. Louis, as alleged in the petition, and that said realty company was the owner of the property described in the petition, and conveyed the same to Judson M. Thompson. They also admitted that on the 25th of September, 1897, Judson M. Thompson made the affidavit that the realty company had been dissolved by a majority vote of its stockholders, and filed the affidavit in the office of the Secretary of State. And they allege that the conveyance to Judson M. Thompson, was made by the realty company in good faith, without fraud, for a full and valid consideration, and without the intent to hinder, defraud or delay any person whatsoever; that Judson M. Thompson had, long before the date of plaintiff's judgment, advanced to the realty company the money with which the property was purchased, and that at the date of plaintiff's judgment the realty company was still indebted to said Thompson for the purchase money of said land, and conveyed the land to him in consideration of its debt, as it had a right to do; that at the date of the judgment and conveyance, all of the stock of the realty company

was owned by Judson M. Thompson and Frank C. Thompson; that the corporation was not indebted to any other person than said Judson M. Thompson whatsoever; and that the judgment obtained by plaintiff against the realty company was obtained by fraud, accident and surprise, and there was no obligation or honest indebtedness to sustain same.

"Further answering by way of cross-bill, the defendants allege that on the 15th day of April, 1893, the Suburban Realty Company, a corporation, existing under the laws of the State of Missouri, executed as maker a note for $1,500 at ninety days, to the order of L. W. Stebbins, treasurer, with interest from maturity at eight per cent per annum, but retained the same in its own custody, and never delivered the same at any time; that while so in its (Suburban Realty Company's) custody and undelivered, it was purloined and abstracted, and secretly and surreptitiously sold by said Stebbins to the plaintiff for an inadequate sum, to-wit, for the sum of $1,125; that said plaintiff Johnson at the time had notice of these facts, and was not a bona fide purchaser for value of the note, did not acquire the same in the usual course of business; that at the time the note came into possession of plaintiff Johnson, it purported to have on it the name of the defendants, Frank C. Thompson and Frank T. Parker, who had written their names on the back as indorsers and not as joint makers, under the express understanding and agreement between them and the maker, that said note should not be negotiated or delivered until indorsed by certain other specified persons, and while in the custody of the said corporation (Suburban Realty Company), and being held undelivered under said agreement, it was stolen by said Stebbins as aforesaid, and sold to the said Johnson as aforesaid, without the knowledge or consent of said indorsers for said company (Suburban Realty Company). That said Stebbins was then also the treasurer of the Stebbins-Thomp-

son Realty Company, and at the time of the sale by him to said plaintiff, J. B. Johnson, at the instigation and demand of said Johnson, without consideration of any kind to it moving, without the authority of its directors, or any of its officers, placed the name of Stebbins-Thompson Realty Company on the back of said note, in the presence of said Johnson, who well knew at the time that said Stebbins-Thompson Realty Company had nothing to do with the note or its consideration, and that it was a gross breach of trust in Stebbins to use its name in this way; that said plaintiff, Johnson, knowing all these facts, had a small judgment against said Stebbins personally, and knowing that Stebbins was treasurer of the Suburban Realty Company, and the proceeds of the note should be company property, prompted and tempted him to convert the proceeds of the note to his own use to the extent of paying this personal debt to him out of the trust fund, and further, that on the 6th day of November, 1893, the plaintiff, Johnson, brought an action against the Suburban Realty Company, Frank C. Thompson and Frank T. Parker, upon the note in question, in the circuit court of the city of St. Louis, and defendants pleaded the facts before mentioned in defense thereto. The case came on for trial, and plaintiff dismissed the case as to Stebbins-Thompson Realty Company; and after the trial a verdict was rendered in favor of the defendants in that case, and it was affirmed by the St. Louis Court of Appeals on the 4th day of May, 1895.

"Then the answer sets out that Johnson instituted a new action against the Stebbins-Thompson Realty Company; that at the time he instituted such action, the judgment against Johnson, affirmed in the St. Louis Court of Appeals, had completely released and discharged the Stebbins-Thompson Realty Company from all liability on the note, and was a complete defense to any action thereon.

"The separate answer of Judson M. Thompson,

sets out substantially the same defenses, and furthermore alleges that the said note for $1,525, made by the Suburban Realty Company, was never delivered by the Suburban Realty Company, and while in its custody and undelivered, said Lovell W. Stebbins purloined and abstracted the same, and secretly and surreptitiously, and without the knowledge of the Stebbins-Thompson Realty Company, indorsed and sold the same to said plaintiff Johnson, for an inadequate sum, $1,131; that said Johnson, at the time of the acquisition of said note, had notice of these facts and was not a bona fide purchaser, and did not pay value therefor, nor purchase the same in the usual course of business, and that said Stebbins, treasurer of the Suburban Realty Company, and on demand of plaintiff Johnson, in his presence, without consideration to it paid, and without any authority from the board of directors, or other officers of said Stebbins-Thompson Realty Company or of that corporation, placed its name on the back of the note at the time of its delivery to said Johnson, who well knew at the time that the latter corporation had nothing to do with the note or its consideration, and that it was a breach of trust in Stebbins to use its corporate name in the manner indicated; that said Johnson had a small judgment against said Stebbins personally, and that this prompted and tempted him to convert this note, which he knew was the property of the Suburban Realty Company, to his own use to the extent of deducting this personal debt from the trust funds, which the proceeds of the note would be if honestly negotiated.

"And it was further set up as a defense to this action, in said answer of said Judson M. Thompson, that it is against conscience to allow plaintiff Johnson to enforce said judgment in this action; that he acquired the note by a fraudulent act deliberately done, and for this reason is disabled from appealing to the assistance of a court of conscience.

"And defendant Thompson further alleged, that at the time of the transfer to him of the property described, said corporation (Stebbins-Thompson Realty Company) was indebted to him in a sum exceeding the value of the property conveyed to him in good faith, and that he received it in good faith as a purchaser in satisfaction of his debt, without any intent on the part of the corporation or himself, to hinder, delay or defraud any person whatsoever, and asks judgment.

"The cross-bill filed by the Stebbins-Thompson Realty Company alleges substantially the same defenses.

"The plaintiff filed a general reply to these various answers.

"Defendant, Lovell W. Stebbins, entered his voluntary appearance, but filed no answer.

"The trial resulted in a judgment in favor of plaintiff, from which an appeal was taken to this court."

Upon the re-trial of this cause, the learned judge, after hearing all the testimony in the cause, announced his conclusions in a written opinion, which was filed. That we may fully appreciate the theory upon which the case was disposed of, we here insert the opinion:

"Plaintiff's judgment against the defendant company can not be questioned in this suit. Nor can the consideration of the note on which it is based.

"It would seem that the conveyance from the defendant company to J. M. Thompson, authorized by only two directors, of whom he was one, should be held invalid for that reason. But the Supreme Court, on the same evidence as to this matter, did not so decide, and for that reason the case will not be decided by this court upon that ground.

"The vital question in the case is, whether the conveyance from the company to J. M. Thompson was without consideration and fraudulent. The evidence shows that Thompson, by his check to himself as trus-

tee, paid $616.20 to John Candler, to satisfy a deed of trust on property which this company had conveyed to said trustee, and for which this company was liable. Thompson, as such trustee, held the property for this company and Schwehr, and at the time of making this payment to himself as trustee, was, as such trustee, conveying the property to the Tesla Realty Company, in which the Stebbins-Thompson Realty Company, Schwehr, and some eight others, were interested as stockholders. The Tesla Company was to pay $13,852, being $6,000 cash and $7,852 by mortgage, to J. M. Thompson, trustee. This occurred about May, 1893. In March, 1895, there was a division of all the said property among the holders of the said mortgage for $7,852 and the stockholders in the Tesla Company, each receiving a deed for a portion of the property in consideration of his stock in the Tesla Company or his interest in the mortgage. The Stebbins-Thompson Company received a deed for a portion of the land, and a part of this is the land now in dispute.

"There is no evidence to show definitely how J. M. Thompson received payment from the Tesla Realty Company or its stockholders of the notes and cash coming to him for the property. There are no books of the Tesla Company.

"J. M. Thompson, at the time the check for $616.20 was made, owed the Stebbins-Thompson Realty Company a balance of $500 on his note for his stock, and no part of the $616.20 was applied on the note. The balance of $500 has since been paid by various small sums advanced by him.

"The item of $616.20 was never entered in the books of the Stebbins-Thompson Realty Company in the course of bookkeeping. It was not entered in the account of J. M. Thompson, trustee, although other items of the same date and of earlier and later dates were so entered.

"The account, in fact, shows payments between the trustee and the company between March 29th and July 26, 1893, and that Thompson, as trustee, was in debt to the company on this account to the amount of $1,109.73.

"The pencil memorandum in the cash book, 'J. M. T. paid $616.20,' was not made in the usual course or in the proper place. It had not been found at the former trial. No one knows when it was made except that F. C. Thompson, the secretary, now testifies that it was there prior to the deed to J. M. Thompson here in question, which was about four years after the transaction.

"The same uncertainty and lack of knowledge on the part of F. C. Thompson and J. M. Thompson, as on the former trial, still exists. They have the check and have found the pencil memorandum. But their recollection is not, and can not well be better now than at the former trial. It is equally as indefinite and unsatisfactory.

"One can not believe that this payment, at the time it was made, constituted an indebtedness from the company to Thompson. If so, it would have been entered or applied in some account, and would not have been permitted, in the numerous transactions between them, to remain unsettled and unpaid, till nearly four years later, when the company's property was about to be taken to satisfy plaintiff's judgment.

"Upon the whole, the defendants have, as at the former trial, failed to show that J. M. Thompson paid for the property; and the attempted conveyance was voluntary and fraudulent and void as to creditors.

"Decree for plaintiff."

Vol 177 mo—38

OPINION.

The facts of this case were substantially the same as they were in the former appeal, fully reviewed by BURGESS, J.

We have fully examined the record and the only material difference attracting our attention, is the pencil memorandum in the cash-book, as follows: "J. M. T. paid $616.20," and some additional offers of testimony as to the alleged fraud in procuring the note, upon which the judgment of the St. Louis County Circuit Court is based.

Counsel for respondent, in his statement, asserts: "There is no change in the pleadings and the testimony in this case is the same as on the previous hearing, so far as appellants are concerned." This assertion is not denied in the reply brief presented by appellants.

We deem it unnecessary to burden this opinion with a full restatement of the facts. The opinion of the trial judge and the complete statement in the former review of this case, embodies sufficiently the facts to determine the legal questions arising in this controversy. [See Johnson v. Realty Co., 167 Mo. 325.]

This controversy springs from a suit brought in the circuit court of the county of St. Louis on the 4th of February, 1899. The facts, briefly, are as follows:

On the 25th of November, 1896, in the circuit court of the city of St. Louis, judgment was rendered in favor of plaintiff and against defendant, the Stebbins-Thompson Realty Company, for the sum of $1,936.20, and execution was issued out of the circuit court of the city of St. Louis, and directed to the sheriff of the city of St. Louis, which was returned "no property found." At the date of said judgment the Stebbins-Thompson Realty Company was the owner of certain property situated in the county of St. Louis, and on the 20th of February, 1897, a deed was recorded purporting to convey said real estate from said corporation

to Judson M. Thompson, president of the corporation, the deed being executed by Thompson as president. On the 20th of February a record of a meeting was entered in the minute-book of the corporation, which is spoken of as a special meeting of the directors, at which were present Judson M. Thompson and F. C. Thompson, and the deed was authorized by Judson M. and F. C. Thompson.

On the 18th of March, 1897, execution was issued out of the circuit court of the city of St. Louis upon said judgment, directed to the sheriff of the county of St. Louis, under which execution the property was sold and purchased by the plaintiff. On the 23d of September, 1897, Judson M. Thompson, defendant, made an affidavit that said corporation was dissolved by a majority vote of its stockholders, which was filed with the Secretary of State.

There was testimony offered, affecting the note and the manner of procuring it, upon which the original judgment of the St. Louis County Circuit Court was based. In other words, defendants undertook to go behind the judgment and show that the debt upon which it was predicated, was not an honest and just claim, and that the plaintiff was not, at the time of procuring the judgment, the legal bona fide holder of said indebtedness.

Upon the first proposition as to the sufficiency of the facts to warrant the trial court in finding that the deed executed and delivered by the realty company to J. M. Thompson, was voluntary and operated a fraud upon the plaintiff's rights as a creditor of said company, we will say, as we have hereinbefore stated, that the evidence upon this branch of the case is substantially the same as upon the former appeal. The additional testimony will not warrant the court in altering the conclusions reached upon the former appeal.

The trial court had the witnesses before it, and upon the disposition of the cause, in treating of the

testimony tending to show the payment of a considera-
tion for the land in dispute, it said:

"J. M. Thompson, at the time the check for $616.20
was made, owed the Stebbins-Thompson Realty Com-
pany a balance of $500 on his note for his stock, and
no part of the $616.20 was applied on the note. The
balance of $500 has since been paid by various small
sums advanced by him.

"The item of $616.20 was never entered in the
books of the Stebbins-Thompson Realty Company in
the course of bookkeeping. It was not entered in the
account of J. M. Thompson, trustee, although other
items of the same date and of earlier dates were so
entered.

"The account, in fact, shows payments between the
trustee and the company between March 29th and July
26, 1893, and that Thompson, as trustee, was in debt to
the company on this account to the amount of $1,109.73.

"The pencil memorandum in the cash-book, 'J. M.
T. paid $616.20,' was not made in the usual course or
in the proper place. It had not been found at the for-
mer trial. No one knows when it was made except
that F. C. Thompson, the secretary, now testifies that
it was there prior to the deed to J. M. Thompson here
in question, which was about four years after the trans-
action.

"The same uncertainty and lack of knowledge on
the part of F. C. Thompson and J. M. Thompson as on
the former trial, still exists. They have the check and
have found the pencil memorandum. But their recol-
lection is not, and can not well be better now than at
the former trial. It is equally as indefinite and unsatis-
factory."

This finding of the trial court is emphasized by the
conclusions reached by this court upon the former re-
view of it. Upon substantially the same testimony,
BURGESS, J., in Johnson v. Realty Co., supra, reviewing

the testimony, as applicable to this particular contention, says:

"The first point presented for our consideration upon this appeal is with respect to the deed from the Stebbins-Thompson Realty Company to J. M. Thompson which plaintiff claims was fraudulent and void because made for the purpose of defrauding the creditors of said corporation, and especially plaintiff.

"The evidence as to the payment by defendant Thompson of the $616 for the release of the property in question, is far from being satisfactory. Defendant's son, F. C. Thompson, who was secretary of the defendant company, did not know how it originated except what he learned from his father, and that he had made no entry of it on the books of the company, and why he did not do so he did not know. And when asked why he did not put it upon the company's note which it held against his father for five hundred dollars, he made the same reply, that is, he did not know. J. M. Thompson's explanation of the transaction was equally as indefinite and unsatisfactory. Upon the whole the evidence failed to show that J. M. Thompson paid any value for the property, and its attempted conveyance to him by the company was voluntary, without any consideration and void as to its creditors."

While in equity cases this court will fully review the facts upon which a decree is predicated, to ascertain if the finding of facts is in keeping with good conscience, yet in so doing, it will not overlook the rule that due consideration is given to the finding of the chancellor who heard the witnesses, and had the opportunity of observing them while testifying, and who is presumed, in reaching his final conclusion, to have applied the well-recognized rules of evidence in determining the weight to be attached to their testimony.

Confronted with these two reviews of the testimony and in addition, a careful examination of the evidence in detail, as indicated by the record, we are unwilling

to disturb the finding of the trial court as to its conclusions upon the question of consideration, alleged to have been paid for the conveyance by the realty company to Judson M. Thompson.

This leads us to the next proposition involved in this controversy. Judson M. Thompson, the principal contesting defendant in this action, at the time of the rendition of the judgment in favor of plaintiff Johnson against the Stebbins-Thompson Realty Company, was the chief stockholder and president of said real estate company, and this presents the question, "Did such relation to the corporation preclude him from going behind the judgment, and developing a state of facts tending to show that the debt was fraudulent, and that in fact the plaintiff was not entitled to recover?" It is very ably and earnestly insisted by learned counsel for appellants that the judgment of the St. Louis County Circuit Court is not conclusive upon him in this proceeding, and that Judson M. Thompson, notwithstanding he was president of the real estate company, and a stockholder at the time the judgment was rendered, has the right in this collateral proceeding to attack the judgment.

Before discussing this proposition, it is well to see what this court announced as to this particular contention, upon the former appeal. In treating of this question, upon the former review of this case, in this court, Judge BURGESS very clearly announced the conclusion reached. He said:

"Now, defendant Thompson was not only a member of the defendant corporation but was its president, and claims whatever title to the land he has by deed from it. And it was by reason of the corporation's own negligence that the judgment was rendered against it under which the plaintiff claims, and the law will not, under the circumstances, afford Thompson any redress unless it be that he be permitted to go behind the judgment and show that the note which was its foundation

was never delivered, and surreptitiously obtained by Stebbins, and that plaintiff received it from him with notice of these facts. It is indisputable that the corporation could not do this in this case, because it, through its officers, knew these facts before the judgment was rendered, and set them up as a defense to plaintiff's cause of action, and by its own negligence permitted judgment to go against it, and defendant being privy to the corporation occupies no better position than it does."

It will be noted that had the force of the conclusion as announced, ended with the sentence, "unless it be that he be permitted to go behind the judgment and show that the note which was its foundation was never delivered, and surreptitiously obtained by Stebbins, and that plaintiff received it from him with notice of these facts," it may have been treated, inferentially, as sanctioning the contention of appellant that the judgmen was not conclusive as against the president of the corporation; but when the rule is announced as applicable to the defendant Thompson it is in the following clear and emphatic terms: "It is indisputable that the corporation could not do this in this case, because it, through its officers, knew these facts before the judgment was rendered, and set them up as a defense to plaintiff's cause of action, and by its own negligence permitted judgment to go against it, and defendant being privy to the corporation occupies no better position than it does."

It leaves no room for doubt as to what this court held upon that proposition. We have carefully reviewed the authorities upon this vital contention involved in this suit, and find the conclusions reached upon the former appeal fully supported by the overwhelming weight of authority and see no sound reason for departing from it. Freeman on Judgments very clearly announces the doctrine on this subject. He says:

"But the existence and organization being proved, there seems, at the present time, to be no doubt that a judgment against a corporation is conclusive evidence of debt against its stockholders, to be avoided only on proof of fraud, collusion, or mistake, and not upon original grounds; and, generally, 'a stockholder is so far an integral part of the corporation that in the view of the law he is privy to the proceedings touching the body of which he is a member.' " [1 Freem. on Judgments (4 Ed.), sec. 177.]

To the same effect is Black on Judgments. He says:

"It must be borne in mind that a corporation is composed of its stockholders, and that a judgment obtained against the corporation is in reality a judgment obtained against the stockholders in their corporate capacity. There is no reason why the members of a corporation should be allowed to contest a creditor's claim twice—once in a suit against the corporation through the corporate agents, and again in a suit brought to charge them individually." [2 Black on Judgments (2 Ed.), sec. 583.]

This court, in the case of Nichols v. Stevens, 123 Mo. l. c. 115, fully approves the doctrine announced by the two eminent writers, as quoted. SHERWOOD, J., speaking for the court, says:

"Whatever may have been thought at a former period, and in some jurisdictions, as to the effect upon a stockholder of a judgment rendered against his corporation, at the present time, the existence and organization of a corporation having been established, a judgment against such corporation, being proved, is conclusive evidence of debt against its stockholders, where the plaintiff in the original and the primary and auxiliary actions is the same, in the absence of collusion, fraud, etc., and not upon *original* grounds. And a judgment by default against a corporation equals, in conclusiveness as to a stockholder, one obtained after

contest. Except on the grounds before mentioned, it is out of the power of a stockholder to go back into the original consideration of the judgment against the corporation, that the indebtedness for which the judgment was rendered, was the debt of the president and not of the corporation. Such judgment against the corporation is valid against a stockholder, until reversed by him in some direct proceeding for that purpose, and can not be attacked collaterally.''

This principle finds support in the case of Hawkins v. Glenn, 131 U. S. 329, 330, where the rule is very aptly announced by Mr. Chief Justice FULLER. He says:

''A stockholder is so far an integral part of the corporation that, in the view of the law, he is privy to the proceedings touching the body of which he is a member. Sanger v. Upton, 91 U.'S. 56, 58, in which case it is also said: 'It was not necessary that the stockholders should be before the court when it (the order) was made, any more than that they should have been there when the decree of bankruptcy was pronounced. That decree gave the jurisdiction and authority to make the order. The plaintiff in error could not, in this action, question the validity of the decree; and for the same reasons, she could not draw into question the validity of the order. She could not be heard to question either, except by a separate and direct proceeding had for that purpose.' ''

Our attention is earnestly directed to the case of Ward v. Joslin, 186 U. S. 142, as being in conflict with the rule herein adhered to. A careful examination of that case will demonstrate that the conflict is more apparent than real. It will be observed that the learned judge is treating of the liability of stockholders, under the Constitution and laws of Kansas. Mr. Chief Justice FULLER says, in that case:

''Whether in this case the corporation would have been held estopped if it had made the defense of *ultra vires*, it did not make it, and judgment went against it.

We have held such judgments conclusive in proceedings under the Kansas Constitution. [National Bank v. Farnum, 176 U. S. 640.] But we did not there hold that it was not open for a stockholder to show that the judgment was not enforcible against him when rendered against the corporation on a contract beyond its power to make. It must be remembered that in the case before us the right of action accrued, and the action was accordingly averred to have been brought 'by virtue of the Constitution and the statutes of the State of Kansas in such case made and provided.' We think it was not error to permit the stockholder to go behind the judgment so far as to show, or, at all events, to insist, for the judgment record introduced below disclosed the invalidity of the guaranties, that he was not liable under that Constitution and those laws.''

It will be noted that the learned judge makes the distinction as to judgments upon contracts which the corporation had the power to make, and those contracts which were beyond the power of the corporation to make. That is not this case. This was a real estate company with power, for the purposes of carrying on its business, to execute and otherwise bind itself on commercial paper. It is not pretended in this case, as the answer fully indicates, that this was a judgment rendered upon a contract beyond the power of the corporation to make. It is true the defense is made that the indebtedness was created without authority and fraudulently obtained. That is a very different proposition to the one announced in Ward v. Joslin, supra, where the corporation, under the circumstances, had the power to make the contract. The learned chief justice, in the Ward case, announced the rule as quoted in the case of Hawkins v. Glenn, supra, and the later case, by no expression or intimation, undertakes to modify the well-recognized principle as applicable to the facts of this case; but that case is treated as an exception to the general rule, based upon the particular

facts under the Constitution and laws of the State of Kansas. It, in no manner, militates against the conclusions reached by this court.

This brings us to the last contention in this case.

It is insisted by appellants that Judson M. Thompson occupied the position of a stranger in the conveyance to him by the realty company, and even though the conveyance be a voluntary one, the judgment not being a lien upon the land, he has the right to go behind the judgment, and show that the claim in fact was not a bona fide one, and the judgment should not have been rendered. The conclusion reached that the judgment was conclusive against Thompson, by reason of his being president of the corporation and one of its chief stockholders, renders it unnecessary, so far as the result of this case is concerned, to treat of the proposition involved in the last contention. However, the question is presented, and we will briefly discuss it.

With very high regard for the views of learned counsel for appellants, as expressed in the brief filed, we, however, after a careful examination of this subject, can not maintain his contention under the facts of this case. It must be remembered that Judson M. Thompson is no stranger to the judgment against the real estate company. He was its president and chief stockholder, with full knowledge of the pendency of the suit which culminated in the rendition of the judgment, with authority to make all the defenses that are now being urged in this proceeding. If, through negligence of himself or his counsel in that proceeding (the present counsel were not representing the company in the original proceeding), the defenses were not made, the fault should not be attributed to the law. Mr. Thompson, in this proceeding, must be regarded as standing in the relation, not only as president and chief stockholder in the realty company, but as a voluntary grantee in the conveyance sought to be set aside. In our opinion, he is precluded as a voluntary grantee in

the conveyance, from questioning the validity of the judgment against his company, by the introduction of evidence tending to show the invalidity of the indebtedness. As to the right to show fraud and artifice in the procuring of the judgment itself, there is no dispute on that proposition.

That a voluntary grantee, with notice of the facts, is in privity with the judgment debtor, has been distinctly recognized by this court. In the case of State ex rel. v. Johnson, 123 Mo. l. c. 55, this court announced:

"Personal representatives, heirs, devisees, legatees, assignees, voluntary grantees, or judgment creditors or purchasers from them with notice of facts, are privies."

The same principle is reannounced in the case of State ex rel. Subway Co. v. St. Louis, 145 Mo. l. c. 567. It is said in that case:

"Privies are those who have mutual or successive relationship to the same right of property or subject-matter, such as 'personal representatives, heirs, devisees, legatees, assignees, voluntary grantees, or judgment creditors or purchasers from them with notice of the fact.'"

Applying this rule to voluntary grantees is sound in principle. Solemn adjudications would be of little force if judgment debtors, in all cases where they owned property to which the lien of judgment did not attach, could donate it, and then the donee compel the judgment creditor to re-litigate questions which were appropriately triable in the original proceeding. This, in effect, would be another method, not heretofore recognized, of securing a new trial, without resorting to the usual legitimate course of filing a motion for new trial in the original proceeding. On examination of the cases in which this question was involved, we find the weight of authority applying the rule to be in accordance with the conclusions herein indicated.

In the case of Swihart v. Shaum, 24 Ohio St. 437, 438, the court very clearly and aptly determined this question. It said:

"In a suit by a creditor, to subject to the payment of his judgment the property of his debtor fraudulently conveyed, the judgment, in the absence of fraud or collusion in obtaining it, is conclusive evidence both as to the fact and the amount of indebtedness. [Candee v. Lord, 2 Comst. 269; Starr v. Starr, 1 Ohio 321.] And it can make no difference whether the conveyance is fraudulent in fact or fraudulent in law. . . . The ground relied on is that the plaintiffs in error are not bound by the judgment, because, it is said, they are not in privity with the judgment debtor. We think otherwise. They claim the land in controversy under the judgment debtor, and are thus in privity with him. At the time of the conveyance, the land was liable for the payment of the debts of the grantor. The conveyance being voluntary, the grantees took the property subject to the right, implied by law, in existing creditors to have it appropriated to the payment of such demands as might in good faith be adjudged in their favor against the grantor. If the judgment does not bind the grantees, it would seem to follow that the creditor would not be bound by it; and that if the amount of the indebtedness could be diminished at the instance of one party, it could be increased at the instance of the other. In our view, the judgment is conclusive, not only as between the parties to it, but as between and against the parties to whom the judgment debtor had conveyed the property sought to be subjected to its payment; and this conclusive effect of the judgment is not affected by the fact that it was recovered after the making of the conveyance."

The court, in the case of Pickett v. Pipkin, 64 Ala. 520, gives expression to its views in even more emphatic terms than the Ohio case. It says:

"A judgment against the donor or grantor,

whether rendered prior or subsequent to the gift or conveyance, is competent evidence of the debt—of the fact that the party, in whose favor it was rendered, stands in a relation to be affected and injured by the gift or conveyance. When rendered in the regular course of judicial proceedings, by a court of competent jurisdiction, in the absence of fraud or collusion, it is conclusive evidence of a debt existing at the time of its rendition. It establishes the relation of debtor and creditor between the parties to the record, and the amount of the indebtedness. There may have been error, or irregularity, in its rendition, or laches in making defense against it; or the court may have mistaken the law, and the rights of the parties to it. The controversy it silences can not be reopened and retried collaterally. The donee or grantee can not inquire into its merits, or allege error, which the debtor could have corrected only by an appeal or writ of error to a superior tribunal. The decrees in favor of the complainants were rendered by a court of competent jurisdiction, in the regular course of proceedings, the defendant having full opportunity of contestation. Their validity is undisputed by the defendants—no fraud, collusion, or want of good faith in obtaining them, is imputed. Whether the court was in error in rendering them, or whether a defense could have been made which would have prevented their rendition, are not open inquiries, and should not have been considered in the court below in the course of this suit."

The doctrine of these cases finds full support in the courts of New York, Illinois, Iowa and many other States. [Burgess v. Simonson, 45 N. Y. 225; Strong v. Lawrence, 58 Iowa 55; Ferguson v. Kumler, 11 Minn. 104; Carpenter v. Osborn, 102 N. Y. 552; Sawyer v. Moyer, 109 Ill. 461.]

In most of these cases, it will be observed the land conveyed was not subject to the judgment lien. The case of Faris v. Durham, 17 Am. Dec. 77, maintains the

contention urged by appellants. It is, however, not based on the fact that no lien attaches. It does not discuss the proposition on that theory. In fact, none of the cases refer to the question whether there was or was not a lien existing. The weight of authority and the sounder reason is opposed to the conclusions reached in the case last cited, and we are not disposed to follow it. In this case, the appellant had full knowledge of the existence of the judgment. The trial court, after a patient hearing of all the testimony, found that the conveyance to him was a voluntary one, and if, under this state of facts, the original cause can be reopened and the issues which were triable in that proceeding, retried, then we confess that judgments would be without the force and effect contemplated by law. If the debt, upon which plaintiff's original judgment was based, was a fraudulent one, never legally delivered, indorsed without authority, these were matters to be adjudicated in the original suit, and it is Mr. Thompson's misfortune that the defenses were not fully made; but this court should not announce a precedent not in accord with the weight of authority, and sound equitable principles, simply to correct and adjust alleged inequities complained of by appellants.

Entertaining the views as herein expressed, the judgment of the trial court is affirmed.

All concur.