167    325
s177   594
s177   596

# JOHNSON, Appellant, v. STEBBINS-THOMPSON REALTY COMPANY et al.

### Division Two, February 25, 1902.

1. **Voluntary Conveyance:** VOID AS TO CREDITORS. A conveyance of real estate to a stockholder by a company, if without consideration, is voluntary, and void as to its creditors.

2. **Judgment:** FRAUD: BURDEN. Where a judgment is attacked as having been obtained through fraud and deceit the burden is on the assailing party to show, by a preponderance of the evidence, that fraud was practiced in the very act of obtaining the judgment, and in such proceeding every presumption is to be indulged in favor of its integrity.

3. ———: COLLATERAL ATTACK. A judgment obtained in a court having jurisdiction of the parties and the subject-matter in controversy, is conclusive between the parties and their privies, and it is not permitted to any of them to subsequently go behind it for the purpose of showing a state of facts which might have been a defense to the action in which the judgment was rendered.

4. ———: ———: NEGLECT OF ATTORNEYS: SETTING ASIDE SALE UNDER EXECUTION. Where the plaintiff, by promises of continuances made to the attorney of a corporation, and during his absence and by fraudulently taking advantage of his absence, and of the absence of his own regular attorney, obtains judgment against the company by default, which is not subsequently directly attacked as being fraudulent, but plaintiff sues out execution and levies on land which said company has voluntarily conveyed to a stockholder, and buys the same, and then brings suit to set such deed aside, the grantee can not show, as a defense to such equitable proceeding, the circumstances under which the judgment through which plaintiff claims title, was obtained, nor the neglect of the company's attorney thereat, nor the false promises made by plaintiff or his attorney as to continuances, etc., nor that that judgment was founded on a note which plaintiff had stolen.

Appeal from St. Louis County Circuit Court.—*Hon. R. Hirzel,* Judge.

REVERSED AND REMANDED.

*W. B. Homer* for appellant.

(1) The deed from J. M. Thompson was fraudulent and void and should be set aside. (a) It was void because it was without consideration and voluntary. (b) It was fraudulent and void because it was made for the purpose of defrauding the creditors of said corporation and especially plaintiff. State to use v. O'Neil, 151 Mo. 88; State ex rel. v. Hope, 102 Mo. 410; National Tube Works Co. v. Machine Co., 118 Mo. 365; Woodson v. Carson, 135 Mo. 521; Imhoff v. McArthur, 146 Mo. 378; State ex rel. v. Hardware Co., 147 Mo. 374; Schufeldt v. Smith, 131 Mo. 290. (c) The deed was void and invalid because it was not executed by authority of the corporation: first, because there was no notice given of the special meeting; second, because there was not a proper quorum present and no legal vote for the making of the deed; third, the president could not convey the property to himself. Foster v. Planing Mill Co., 92 Mo. 79; Hill v. Coal & Min. Co., 119 Mo. 9, 23; Calumet Paper Co. v. Printing Co., 144 Mo. 331; Remers v. Seky, 70 Mo. App. 364; Jones v. Williams, 139 Mo. 76; Butts v. Wood, 37 N. Y. 317; Funsten v. Commission Co., 67 Mo. App. 563; Davis Mill Co. v. Bennett, 39 Mo. App. 460; Ward v. Davidson, 89 Mo. 454; Van Hood v. Mfg. Co., 5 N. J. Eq. 168; Ice Co. v. Reed, 2 How. Pr. 253; Railroad v. Adams, 87 Tex. 125; Copeland v Bacon, 54 Hun 237; Jones v. Morrison, 31 Minn. 140; Wright v. Bank, 52 N. J. Eq. 392; 7 Thompson on Corporations, sec. 8478; 3 Thompson on Corporations, sec. 3929; McKeag v. Collins, 87 Mo. 164; Hall v. Bank, 145 Mo. 427; Miner v. Ice Co., 93 Mich. 110. (2) Equity will not set aside a judgment except for

fraud practiced in the very act of obtaining the judgment, and then only in cases free from negligence on the part of the party against whom judgment was taken. Lewis v. Williams, 54 Mo. 200; Nichols v. Stevens, 123 Mo. 116; McClanahan v. West, 100 Mo. 320; Moody v. Peyton, 135 Mo. 482; Hamilton v. McLean, 139 Mo. 678; Murphy v. DeFrance, 101 Mo. 157; Hotel Co. v. Parker, 58 Mo. 329; Neun v. Building & Loan Assn., 149 Mo. 80; Caldwell v. White, 77 Mo. 471; Fears v. Riley, 148 Mo. 58; Bates v. Hamilton, 144 Mo. 1; Oxley v. Stave Co., 121 Mo. 630; Donnell v. Wright, 147 Mo. 648; United States v. Throckmorton, 98 U. S. (8 Otto) 61; Greene v. Greene, 2 Gray (Mass.) 361; Postlewaite v. Ghiselin, 97 Mo. 420; Corolus v. Koch, 72 Mo. 646; Reed v. Hansall, 37 Mo. 202. (3) The president of a corporation, having charge of the litigation, is bound by a judgment rendered against a corporation, and the same is conclusive evidence against him of the debt, and he can not attack it unless he can show that the judgment against the corporation was concocted in fraud, and that the fraud was practiced in the very act of obtaining the judgment. Nichols v. Stevens, 123 Mo. 115; Neun v. Building & Loan Assn., supra; State ex rel. v. St. Louis, 145 Mo. 567; Wood v. Ensel, 63 Mo. 193; Strong v. Ins. Co., 62 Mo. 295. (4) As to the proposition that the judgment was procured by fraud, the burden is upon the defendant to establish such contention. Oxley v. Butler, 121 Mo. 63; Anthony v. Rice, 110 Mo. 228; Ensor v. Smith, 57 Mo. App. 589. (5) The court erred in allowing the pleadings, verdict and mandate, in the case of Johnson v. Suburban Realty Company, to be introduced in evidence, and in permitting witness F. C. Thompson to testify regarding alleged facts relating to the cause of action upon which the judgment was founded. Cases cited under points 2 and 3. (6) There is no evidence tending to show that the plaintiff has taken any steps which would preclude him from relief in a court of equity, and the court will not look into any acts

which related to the cause of action upon which the judgment was founded to discover any such acts. Conover v. Jeffrey, 26 N. J. Eq. 36; Creath v. Sims, 5 How. 191; Allen v. Berry, 50 Mo. 90; Berneker v. Miller, 44 Mo. 111; Foster v. Winchester, 92 Ala. 497; Woodward v. Woodward, 41 N. J. Eq. 225.

*Given Campbell* for respondents.

(1)    It is a maxim of equity "grown hoary beneath the reverend respect of centuries," that he who challenges the conscience of the chancellor must come before him with clean hands. In the case at bar appellant's hands, when held up and shown to the court, were foul with fraud. Cassidy v. Metcalf, 1 Mo. App. 593; Conover v. Jeffry, 26 N. J. Eq. 39; Creath v. Sims, 5 How. (U. S.) 204; Cassidy v. Connor, 37 Iowa 300; High on Injunctions, sec. 205. (2)    The lower court should have granted the prayer of respondents in their cross-bill, to set aside the judgment rendered in the circuit court of the city of St. Louis against the Stebbins-Thompson Realty Company, as the same was fraudulently obtained. High on Injunctions, sec. 202; Freeman on Judgments, sec. 418; Wait on Fraudulent Conveyances (3 Ed.), sec. 270; Clark v. Anthony, 31 Ark. 546; Railroad v. Kyle, 5 Bos. 587; Hinde's Lessee v. Longworth, 11 Wheat. 199; Warner v. Percy, 22 Vt. 155; Freeman on Judgments, sec. 335; Bump on Fraudulent Conveyances, secs. 587, 588; Brueggmann v. Harr, 7 Minn. 337; Inman v. Mead, 97 Mass. 310; Jamison v. Bagot, 106 Mo. 240; Troy v. Smith, 33 Ala. 471; Ford, Admr., v. O'Donnell, 40 Mo. App. 51. (3)    There is no legal foundation for the point that respondent Thompson, because he was president of the Stebbins-Thompson Realty Company, was in privity with that action in his individual affairs and therefore concluded by that judgment. State ex rel. v. Branch, 134 Mo. 392. (4)    The record in the case of

Johnson v. Suburban Realty Company et al., decided by the Court of Appeals and reported in 62 Mo. App. 156, shows that at the time the action was brought by Johnson in this case there was a good defense to it, because it had been adjudicated in that court that Johnson obtained this note from Lovell W. Stebbins, having good reason to believe that it was stolen, and that Stebbins had no right to dispose of it, and that the maker of said note and the indorser had been discharged.  Wells, Res Adjudicata, sec. 105; Jackson v. Griswold, 4 Hill (N. Y.), 529; Wells on Res Adjudicata, secs. 140, 145; Brown v. Troy, 74 Mo. App. 463; High on Injunctions, secs. 134, 1377; Chitty on Contracts, p. 460; Ames v. McCauley, 14 Iowa 281.  (5)  Appellant Johnson was not a creditor of the Stebbins-Thompson Realty Company, at the time of the transfer by said realty company to respondent J. M. Thompson, because it is *res adjudicata* that the indorsement of the Stebbins-Thompson Realty Company on the paper of the Suburban Realty Company, and upon which Johnson recovered judgment against the Stebbins-Thompson Realty Company, was obtained by fraud, and conveyed to Johnson, as we have above shown, no title to the note which a court of equity can recognize.  (6)  The law applicable to cases of this kind is perfectly plain.   Schufelt v. Smith, 131 Mo. 290; Milling Co. v. Burns, 152 Mo. 376; Crothers v. Busch, 153 Mo. 612; Butler v. Land & Mining Co., 139 Mo. 467.

BURGESS, J.—This is a suit in equity by plaintiff, a judgment creditor of the defendant Stebbins-Thompson Realty Company, a corporation, to set aside a deed to a tract of land therein described, from said corporation to the defendant Judson Thompson, upon the grounds that it was a voluntary conveyance and a fraud upon the creditors of the realty company and especially the plaintiff.

The petition alleges that the plaintiff on November 25, 1896, obtained a judgment in the circuit court of the city

of St. Louis against the Stebbins-Thompson Realty Company, for the sum of $1,936.21 on which judgment and execution were issued and returned *nulla bona* February 1, 1897; that at the time said execution was issued and returned, the realty company was the owner of certain parcels and lots of land in said St. Louis county, in the petition described; that on February 20, 1897, the realty company, with the intent to hinder, delay and defraud its creditors and especially the plaintiff, conveyed said lands to defendant, Judson M. Thompson, for the pretended consideration of $1,000, and that the said J. M. Thompson thereupon took possession of said property; that in fact no consideration was paid and the deed was purely voluntary; that the said J. M. Thompson was at the time president of the realty company, and as such conveyed the land to himself, without authority from the board of directors; that in March, 1897, an *alias* execution was issued on said judgment of the plaintiff to the sheriff of this county and the lands aforesaid were sold at public sale under said execution and purchased by plaintiff on June 25, 1897, and on September 23, 1897, the said J. M. Thompson filed his affidavit, stating that the realty company by a majority vote of its stockholders has been dissolved as a corporation. The bill asks that the conveyance aforesaid to J. M. Thompson may be adjudged fraudulent and void and that the same be set aside, and that defendant may be enjoined and restrained from selling and disposing of the property.

The answer of Judson M. Thompson and Frank C. Thompson, two of the trustees of the former realty company, sets forth that said realty company was dissolved in September, 1897, and then admits the judgment obtained by plaintiff, and the conveyance to J. M. Thompson, and states that the latter was made for a full and valid consideration; that defendant, J. M. Thompson, had advanced to the realty company the purchase price for the land, and that at the time the plaintiff obtained his judgment, the realty company was

indebted to J. M. Thompson for the purchase price of the
land, and said realty company was at that time not indebted
to any other person except J. M. Thompson, and he and his
co-defendants, Frank C. Thompson, were then and there the
owners of all the stock in said realty company, and the plain-
tiff's judgment against said realty company was obtained by
fraud and surprise, and there was no obligation or honest in-
debtedness to pay the same.

Further answering and by way of cross-bill defendants
allege in detail and quite elaborately that the note upon which
the aforesaid judgment was obtained was a fraud on the realty
company and other indorsers, as well as the original maker of
the note; that the note was in fact stolen by defendant Steb-
bins, and wrongfully and without authority indorsed by him
for and in behalf of the Stebbins-Thompson Realty Company,
and without their knowledge or consent; that when plaintiff
bought this note he knew all these facts and did not pay full
consideration for it; that suit was brought on this very note by
the plaintiff against the Suburban Realty Company, the orig-
inal maker, and Parker and Thompson, as indorsers, and also
against the Stebbins-Thompson Realty Company as indorsers,
but dismissed as to the latter before trial, and that in said
suit judgment was rendered for the defendants in said cause,
upon showing these facts upon the trial in court, and the same
was afterwards affirmed in the St. Louis Court of Appeals on
the fourth day of May, 1895, and by reason of said trial and
judgment the Stebbins-Thompson Realty Company was com-
pletely discharged and released and the same became adjudi-
cated as to said realty company.

For a further defense these defendants allege that the
plaintiff obtained the aforesaid judgment against the Stebbins-
Thompson Realty Company by deceit and false and fraudulent
contrivances; that plaintiff's attorney by cunning and false
representations deceived the attorney for the defendants, he
also being then and there the attorney for the realty company

in said suit, and obtained a judgment upon said note during his absence from the city of St. Louis.

The allegations of new matter are generally denied by the plaintiff in his replication herein filed.

Although the defendant Stebbins entered his voluntary appearance he did not answer. Judson M. and Frank C. Thompson, answered jointly, and Judson M. Thompson also filed a separate answer. Judson M. Thompson, and Frank C. Thompson his son, and Stebbins, composed the board of directors.

The trial resulted in judgment for defendants, from which plaintiff appeals.

The salient facts are about as follows: On November 25, 1896, in the circuit court of the city of St. Louis, judgment was rendered in favor of plaintiff, and against defendant Stebbins-Thompson Realty Company, for the sum of $1,936.20, and execution was issued out of the circuit court of the city of St. Louis, and directed to the sheriff of the city of St. Louis, which was returned "no property found." At the date of said judgment Stebbins-Thompson Realty Company was the owner of certain property situated in the county of St. Louis, and on February 20, 1897, this company caused a deed to be recorded purporting to convey said real estate from said corporation to Judson M. Thompson, president of the corporation, the deed being executed by Thompson as president. On February 20, a record of a meeting was entered in the minute book of the corporation, which is spoken of as a special meeting of the directors, at which were present Judson M. Thompson and F. C. Thompson, and the deed was authorized by Judson M. and F. C. Thompson. The third member of the board of directors was not present nor was he notified.

On March 18, 1897, execution was issued out of the circuit court of the city of St. Louis upon said judgment, directed to the sheriff of the county of St. Louis, under which

execution the property was sold and purchased by the plaintiff. On September 23, 1897, Judson M. Thompson, defendant, made an affidavit that said corporation was dissolved by a majority vote of its stockholders, which was filed with the Secretary of State.

At the time of signing the note upon which the judgment was rendered under which the land in question was sold, there was another company, called the Suburban Realty Company, of which the defendant F. C. Thompson was secretary, Lovell W. Stebbins, treasurer, and George T. Parker, president. This company, on April 17, 1893, made its note for $1,525, payable ninety days after its date to the order of Stebbins as treasurer, which was indorsed by Parker and F. C. Thompson conditionally, and by Stebbins individually. The note was never delivered by the Suburban Realty Company to any other person, and while it remained in the possession of Stebbins as the treasurer of the company he wrote the name of the Stebbins-Thompson Realty Company on the back of the note and sold it to the plaintiff James B. Johnson, who had full knowledge of the fact that it was the property of the defendant company, and that Stebbins had no authority to sell the same.

The company never realized anything from the purchase of this note. Johnson gave to Stebbins $250 and paid him the residue, less $112, on April 29, 1893. The $112 deducted consisted of the amount of a judgment against Stebbins which Johnson held, and it was settled by this transaction.

The note not being paid at maturity, plaintiff brought suit in the circuit court of the city of St. Louis against the Surburban Realty Company, George T. Parker, Frank C. Thompson, Lovell W. Stebbins, and Stebbins-Thompson Realty Company. A defense was made to this suit to the effect that the note was never delivered, and that while in the custody of the company and being held in escrow it was stolen by Lovell W. Stebbins, and without the knowledge of defendants, or any authority, sold to the plaintiff, who had notice of the

circumstances.    Before the trial of the case it was dismissed as
to the Stebbins-Thompson Realty Company.    The case went
to trial and a judgment was rendered in favor of the defend-
ants, the Surburban Realty Company, the maker of the note,
George T. Parker, and Frank C. Thompson.

Subsequently this suit was instituted by said James B.
Johnson on the same note in the circuit court of the city of
St. Louis against the Stebbins-Thompson Realty Company.

As to what passed during the pendency of this suit there
is an absolute conflict between the testimony of Mr. W. B.
Homer and Mr. John M. Glover, Mr. Glover insisting that
he was informed by Mr. Homer that the suit would not be
prosecuted to a judgment, and that, therefore, he filed a gen-
eral denial.    After two continuances it seems that the case
was called for trial during Mr. Glover's absence from the
city, and the matter was taken up by Mr. Johnson himself,
in the absence of Mr. Homer, and the court rendered a judg-
ment without the presence of counsel for the defendant.

With respect to the consideration for the conveyance of
the lot in question by the Stebbins-Thompson Realty Com-
pany to Judson M. Thompson, it appears that Thompson
claimed that long before the date of plaintiff's judgment he
advanced to that corporation the money with which the prop-
erty was purchased, and thereafter F. C. Thompson presented
the following resolution:    "Whereas, this corporation is in-
debted to J. M. Thompson for the value of the purchase price
for so much of the property known as the Chandler tract at
Glendale as belongs to this company; Resolved, that the pres-
ident be directed to convey the same to him in extinguishment
of this company's obligation."

In pursuance of this resolution J. M. Thompson, as pres-
ident of said company, executed to himself a deed to the prop-
erty in which the consideration is recited to be one thousand
dollars, while the evidence showed that the company was not
indebted in any amount for said tract.    Stebbins testified that

at the time of his resignation as treasurer of the Stebbins-Thompson Realty Company it owed nothing to J. M. Thompson, but that Thompson was indebted to the company in the sum of five hundred dollars, on a note given for shares of capital stock in the company.

F. C. Thompson, son of J. M. Thompson, who was the secretary of the company, testified, in answer to a question as to whether the corporation owed his father any money at the time of the conveyance, that it owed his father at that time about $1,130.    On cross-examination he testified that the company never owned any property except this Telsa Place property.    He in no way contradicts the statement of Stebbins regarding the acquisition or disposal of the property; that he was able to produce the cashbook of the company but could not find the ledger or any other book of the company.    Said they were lost.    On redirect examination he testified "the total credits of the cashbook footed $353.34; the interest, I figured up, which run for a period of over three years, amounting to $28.91; then in addition to that we credited him with $616.20, paid by him for the account of Stebbins-Thompson Realty Company."    He further testified on cross-examination:

"The Court:    Q.    Your father paid $616 for what?
A.    For the release of his Telsa property.

"Q.    Why haven't you it entered on that book?  A.    The company didn't have the money and father—

"Q.    At that time you had his note—why didn't you put it on the note?    A.    I don't know.

"Q.    Do you know why the $616 didn't go into the book?
A.    He paid it at that time in settlement of this property.

"Q.    Why didn't it go on the book?    A.    I don't know, I told you.

"Q.    And you don't know why it didn't go on the note?
A.    We more than paid the note.

"Q. Does your. father pay interest on the demand note? A. Not unless it was accrued.

"Q. He charges the company interest? A. Yes, sir.

"Q. But they don't get any interest from him? A. No, sir.

"Q. When did you discover that the $616 had been left off the book? A. It was about the time the deed was made to my father.

"Q. It was after that, wasn't it? A. No, sir; about that time.

"Q. How did you discover it? A. Probably before that time.

"Q. Well don't change—that is the time you discovered it—how did you happen to discover it, then? A. Looked up to see.

"Q. Where did you find it? A. I didn't find it, father knew of it.

"Q. You didn't know it before? A. Yes, sir; I did. I told you it was intended to settle the company up afterwards. There was money due us for other purposes, and he advanced us money to help to close up the deal.

"Q. Yes—and others gave you money? A. Yes, sir.

"Q. There was a syndicate and your father was one? A. Yes, sir.

"Q. And they all put up some money in reference to this. deal and formed another corporation called the Telsa Realty Company? A. Yes, sir.

"Q. And out of that deal they expected to get their money back? A. Yes, sir.

"Q. And your father was just the same as the rest of them? A. Yes, sir.

"Q. The company owed the whole lot the money? A. I don't know what you mean now by the Telsa Realty Company—they owed a whole lot of money to the Stebbins.

"Q. This syndicate, called the Telsa Realty Company,

owed the Stebbins-Thompson Realty Company money? A. Yes, sir.

"Q. And your father was a member of that company also? A. Yes, sir."

J. M. Thompson, defendant, testified:

"Q. Now, please explain to us this payment of $616, when it was made? A. It was made on April 3, 1893. It was made to the order of John Chandler, the original owner of the property. They wanted to remove all incumbrances on the property, to take up the notes that were given for the purchase of the property. The purpose was to make the consideration in the deed the amount of my debt, which was, as near as I recollect, at the time, without counting interest, $1,000. I asked my son and he gave me these figures."

On cross-examination he testified:

"The Stebbins-Thompson Realty Company gave me no memorandum, showing that they owed me this $616.

"Q. Did you have an entry on the books to that effect? A. I never had anything to do with the books; they didn't know that the note was sold until three months afterwards, then how could they make an entry."

Being further asked as to the entries on the books, he testified:

"I did not expect it to be entered; I paid lots of money I had not entered.

"Q. Now the Stebbins-Thompson Realty Company never in any book or paper, or in any way, made an acknowledgment, so far as you know of, of your paying this $616? A. No, sir.

"Q. And you never asked them for it? A. No, sir.

"Q. And you had a note in which you owed them considerable amount and you never paid it or credited that note? A. I paid that note.

"Q. Long afterwards you paid it? A. No, sir; not

Vol 167 mo—22

long afterwards; it could have been paid any moment.

"Q.    But did you pay it after you had paid this $616?
A.    I did not keep any account of that.

"Q.    Answer my question?    A.    No, sir.

"Q.    Can you give any reason why you did not have your
note cancelled after you had paid that $616 out?    A.    It
had no connection with the note; I never thought of it at the
time; I can give no other reason.

"Q.    You never thought of claiming this $616 at the
time, did you?    A.    I have stated all I care to state about
that, sir."

The first point presented for our consideration upon this
appeal is with respect to the deed from the Stebbins-Thomp-
son Realty Company to J. M. Thompson which plaintiff claims
was fraudulent and void because made for the purpose of de-
frauding the creditors of said corporation, and especially plain-
tiff.

The evidence as to the payment by defendant Thompson
of the $616 for the release of the property in question, is
far from being satisfactory.    Defendant's son, F. C. Thomp-
son, who was secretary of the defendant company, did not
know how it originated except what he learned from his
father, and that he made no entry of it on the books of the
company and why he did not do so he did not know.    And
when asked why he did not put it upon the company's note
which it held against his father for five hundred dollars, he
made the same reply, that is, he did not know.    J. M. Thomp-
son's explanation of the transaction was equally as indefinite
and unsatisfactory.    Upon the whole the evidence failed to
show that J. M. Thompson paid any value for the property,
and its attempted conveyance to him by the company was vol-
untary, without any consideration and void as to its creditors.

But defendants contend that the judgment under which
plaintiff claims title was obtained by him through fraud and
deceit.    The respective counsel testified upon the trial upon

this branch of the case, and their evidence was contradictory and irreconcilable as to the circumstances connected with the procurement of the judgment.

The burden was upon defendants to show by a preponderance of the evidence that fraud was practiced by plaintiff in the very act of obtaining the judgment (Murphy v. De France, 101. Mo. 151; Moody v. Peyton, 135 Mo. 482; Bates v. Hamilton, 144 Mo. 1), and as every presumption is to be indulged in favor of its integrity, we are of the opinion that they failed to do so, and the trial court so found.

But it may be said that notwithstanding the evidence adduced by defendants in support of their cross-bill may have been insufficient to justify the vacating and setting aside the judgment rendered in favor of plaintiff against the Stebbins-Thompson Realty Company, yet it is sufficient to show that the judgment itself is fraudulent, that. the suit against the realty company was fraudulently and without legal right instituted, or that the plaintiff, as a matter of law, was not entitled to said judgment against the realty company, and that he acted in bad faith and without warrant of law when he obtained the same, even though it was due to defendants' neglect and no fraud was shown in the procurement of said judgment.

All of the authorities hold that a judgment of a court having jurisdiction of the subject-matter of controversy and of the parties, can not be impeached collaterally in an action between the same parties or their privies in law, upon a point put in issue and decided, but that the party desiring to avoid the judgment must apply to the court which pronounced it to have it vacated. [Callahan v. Griswold, 9 Mo. 784; Field v. Sanderson, 34 Mo. 542.]

In Freeman on Judgments, sec. 334 (2 Ed.), it is said: "The parties to an action can not impeach or set at naught the judgment in any collateral proceeding, on the ground that it was obtained through fraud or collusion. It is their business

to see that it is not so obtained. If, without any fault or neglect of one party, his adversary succeeds, by fraud, in obtaining an inequitable and unauthorized judgment, he must take some proceeding prescribed by law to annul the judgment, and can not, in the absence of such annulment, treat it as invalid. It is only third persons who have the right to collaterally impeach judgments. They are accorded the right because, not being parties to the action, nothing determined by it is, as to them *res adjudicata.*"

It has been held that a purchaser of real property who holds under a judgment debtor, can not impeach the judgment upon other grounds than those which would entitle the judgment debtor to impeach it; that he occupies the same position as the judgment debtor, and that his rights are not enlarged by reason of his purchase, and even though fraud was practiced upon the judgment debtor in the procurement of the judgment, this will not entitle a party claiming under the judgment to impeach it unless the judgment debtor could do so. [2 Freeman on Judgments (4 Ed.), sec. 335; Johns v. Pattee, 55 Iowa 665; Gallaugher v. Congregation, 35 La. Ann. 829; Stoutimore v. Clark, 70 Mo. 471.] Now, defendant Thompson was not only a member of the defendant corporation but was its president and claims whatever title to the land he has by deed from it. And it was by reason of the corporation's own negligence that the judgment was rendered against it under which plaintiff claims, and the law will not under the circumstances afford Thompson any redress unless it be that he be permitted to go behind the judgment and show that the note which was its foundation was never delivered, and surreptitiously obtained by Stebbins, and that plaintiff received it from him with notice of these facts. It is indisputable that the corporation could not do this in this case, because it, through its officers, knew these facts before the judgment was rendered, and set them up as a defense to plaintiff's cause of action, and by its own negligence permitted judgment to go

against it, and defendant being privy to the corporation occupies no better position than it does.

Whatever may be the rule elsewhere, it seems to us the better rule is that "the parties to an action, and the persons in privity with them, can not attack or impeach a judgment for fraud; and any attack must be regarded as collateral, which is made in 'any proceeding which is not instituted for the express purpose of annuling, correcting, or modifying, a judgment or decree.' " [2 Freeman on Judgments (4 Ed.), sec. 336; Morrill v. Morrill, 20 Oregon, 96.]

Defendants, however, rely upon the case of Conover v. Jeffry, 26 N. J. Eq. 39, in which the case of Rich v. Sydenham, Chan. Cases, 202, seems to be approved, wherein it was held that in a proper case the court may look behind a judgment at law, in order to do justice to the parties to it, as in a case where the plaintiff, when the defendant was drunk, got a bond from him for £1,600 for a loan of £90, and had recovered judgment at law for the bond. His bill, filed to subject certain property held in trust for defendant's wife, to the payment of the judgment, was dismissed on the ground of the iniquity of his conduct in obtaining the bond. But the case of Rich v. Sydenham was not well considered, nor is it supported by either reason or authority, and the doctrine therein announced clearly erroneous. And even in the New Jersey case it was ruled that as the case was simply that of a judgment creditor who had established his claim at law, seeking in equity to reach his debtor's property which had been fraudulently conveyed away, the debtor was in no position to contest the creditor's right to his judgment; that to such a suit it was no defense that the conduct of the creditor in obtaining his judgment was inequitable.

A judgment obtained in a court having jurisdiction of the parties and the subject-matter in controversy, is conclusive between the parties thereto and their privies, and can not be gone behind for the purpose of showing a state of facts which

might have been a defense to the action in which the judgment was rendered.

For the reasons indicated the judgment is reversed and the cause remanded.    All concur.