WARREN IRR. CO. v. CHARLTON et al.

No. 3520.   Decided April 22, 1921.   (197 Pac. 1030.)

1.  WATERS AND WATER COURSES—SLOWNESS OF MOVEMENT DOES NOT AFFECT RIGHTS OF LOWER APPROPRIATOR TO RESTRAIN DIVERSION. The right of an appropriator of water to restrain the diversion of water from holes in the bed of the stream above the appropriator's intake is not affected by proof that the water in such holes would move so slowly through the river bed that it would not reach the appropriator's intake until the following season, since the diversion would be injurious to him, unless it was shown the diverted water would otherwise reach him outside the irrigating season.

2.  WATERS AND WATER COURSES—EVIDENCE HELD TO SUSTAIN FIND-ING DEFENDANT'S DIVERSION DIMINISHED FLOW AT PLAINTIFF'S IN-TAKE. In an action to enjoin the diversion of water above an appropriator's intake, evidence held to sustain the trial court's finding that the diversion by defendants substantially dimin-ished the flow of the water at plaintiff's intake.

3.  WATERS AND WATER COURSES—APPROPRIATOR'S RIGHT TO INJUNC-
    TION NOT AFFECTED BY EXISTENCE OF PRIOR APPROPRIATION BY
    STRANGER. The right of an appropriator to enjoin the diversion
    of water from the stream above his intake cannot be defeated
    by defendants' claim that a stranger to the action had an appro-
    priation prior to plaintiff's since plaintiff would be entitled to
    the water as against defendants in case the prior appropriator
    did not take the water, and especially where the evidence
    showed that the flow at plaintiff's intake, if undiminished,
    would exceed the prior appropriation.

4.  WATERS AND WATER COURSES—STATE ENGINEER'S CERTIFICATE
    CANNOT BE IMPEACHED BY PAROL IN COLLATERAL PROCEEDINGS. The
    certificate of the state engineer that an appropriation of water
    had been perfected, given under the authority of Laws 1903, c.
    100, § 45, cannot be impeached by parol evidence by defendant,
    in an action by the appropriator to enjoin diversion of the
    appropriated waters, which is a collateral proceeding.

5.  WATERS AND WATER COURSES—JUNIOR APPROPRIATOR MAY DI-
    RECTLY ATTACK ENGINEER'S CERTIFICATE. Junior appropriators,
    or contemplated appropriators of water under the state law,
    have a right in a direct proceeding to cancel and annul the
    state engineer's certificate of appriation on equitable grounds.[1]

Appeal from District Court, Second District, Weber
County; *A. W. Agee*, Judge.

Action by the Warren Irrigation Company against Ray
Charlton and others. Judgment for plaintiff, and defendants
appeal.

·AFFIRMED.

*Jos. Chez*, of Ogden, and *D. A. Skeen*, of Salt Lake City,
for appellants.

*Geo. Halverson*, of Ogden, for respondent.

THURMAN, J.

Plaintiff is a corporation engaged in furnishing and sup-

---

[1] *New Era Irr. Co.* v. *Warren Irr. Co.*, 48 Utah, 551, 160 Pac. 1197.

plying its stockholders with water from the Weber river for the irrigation of certain lands in Weber county. It bases its claim for water on three separate and distinct appropriations. The first was made by means of a dam across the Weber river and a canal leading therefrom to the land upon which the water is used. This is its oldest appropriation, and is not involved in this litigation. Its second alleged appropriation was initiated by its predecessor in interest, W. L. Stewart, who filed an application in the office of the state engineer for 15 second feet of the waters of said river September 1, 1903. The water sought to be appropriated was to be lifted from the river by means of a pump and thence turned into a conduit leading to plaintiff's canal. A certificate for this appropriation was afterwards issued by the state engineer to said Stewart, and the water right represented thereby was conveyed by him and his wife to the plaintiff company. The third alleged appropriation was made by the plaintiff in May, 1913, by filing an application in the office of the state engineer for the right to store 1,800 acre-feet of the waters of said river by means of a cement dam to be constructed across said river, at a point known as Draney's Bend, so as to obstruct the flow of the river.

The defendants base their claim solely on the diversion and use of what they denominate "dead water" of Weber river standing in holes and depressions in the bed of the river. The diversion is made by means of a power pump installed on the bank of the river, and the water diverted is conveyed by ditches to the land upon which it is applied. Defendants' pump is situated about 3½ miles, following the course of the river, above plaintiff's dam at Draney's Bend to which reference has been made. Defendants' pump was installed about June 1, 1913, and they allege that it has been used during each and every year since that time for the purpose of irrigating their lands, and that by said means they have irrigated and improved their lands aggregating about 240 acres.

All of the lands referred to in the pleadings and evidence are barren and unfruitful without irrigation. The pumping

plants of both plaintiff and defendants are situated below the intake of plaintiff's gravity canal, through which it made its first appropriation.

The trial court found the issues in favor of the plaintiff, and awarded it the water to the extent of 15 cubic feet per second whenever there was a surface stream flowing in the channel of the river above the plaintiff's pump, if such quantity, in connection with plaintiff's other supply, was necessary for plaintiff's use. Defendants were perpetually enjoined from interfering with the right so awarded. Defendants appeal, and rely on the following grounds for a reversal of the judgment:

"(1)  The water in question was not included in any appropriation claimed by the plaintiff, but was unappropriated water standing, in holes in the river bed, and never reached the point of diversion claimed by the plaintiff.  (2)  If this water be regarded as a part of the flow of the river, the evidence shows that the plaintiff, Warren Irrigation Company, had only a secondary right; the prior right to seven second feet of water being in the Pioneer Land & Irrigation Company.  (3)  The certificate of appropriation of water issued by the state engineer to W. L. Stewart and assigned to the plaintiff, introduced in evidence as the basis of the right of the Warren Irrigation Company, was only prima facie evidence of the appropriator's right to the use of the water, and the defendants and appellants should have been permitted to introduce evidence to contradict the recitals of the certificate."

1.  The first ground relied on presents a pure question of fact. If appellants' contention is true concerning this proposition, we need go no further in our investigation. If the water used by the appellants is not included in plaintiff's second or third appropriation, above described, then, of course, plaintiff has no cause of action and no grounds for complaint.

The trial court, after finding that plaintiff's several appropriations were valid and in full force and effect, made the following finding, which is directly contrary to appellants' contention upon the proposition we are now considering:

"That on and prior to the 26th day of June, 1919, the defendants, while plaintiff was diverting and distributing the waters so appropriated by it to its stockholders for the irrigation of their said lands and crops, and while said crops were in actual need of said water,

entered upon the Weber river at a point below the intake of plaintiff's gravity canal hereinbefore mentioned and above Draney's Bend, the point at which plaintiff's pumping plant was located, and by means of a power pump and ditch wrongfully diverted a portion of the flow of the waters of said Weber river flowing at the point where said pump was stationed, and thereby diminished the flow of the waters of said stream and the water reaching plaintiff's said pump, dam, and ditches, and thus reduced the quantity of water which plaintiff was able to obtain and deliver to its stockholders below the amount or quantity to which the plaintiff was entitled and below the amount actually and necessarily required for the irrigation of the lands of its stockholders and the crops growing thereon and that said defendants threaten to and will so continue to divert said water from the plaintiff and its stockholders unless restrained and enjoined by the judgment of this court, and that, if said diversion of said waters by said defendants, is continued, great and irreparable damage and injury will be done the plaintiff and its stockholders."

To the same point, and somewhat more specific as relating to the first ground upon which appellants rely, we quote the following excerpt from finding No. 12:

"That at the time defendants installed their pump as aforesaid, and while operating the same, the waters pumped by them were a part of the running waters of said Weber river and constituted a part of said stream at all times referred to in the defendants' answer, and that the same was not dead water, and that the pumping of said water from said river at said times reduced the quantity of water which would otherwise have reached the pumps of plaintiff below the 15 second feet to which plaintiff was entitled."

It remains to be seen whether these findings are so clearly against the weight of evidence as to justify this court in reversing the judgment.

The evidence tends to show that between the intake of plaintiff's gravity canal and its cement dam at Draney's Bend the bed of the river contains numerous bodies of water which the witnesses refer to as "holes." These holes are of different areas—some small and some covering many acres. They also vary in depth, from a few feet to depths that cannot be determined by a mere casual inspection. These holes are generally connected by small channels in which water is flowing from one hole to another. The channels are more shallow than the holes; consequently the holes cannot be completely drained by the channels. Appellants contend that

the water of these holes, especially that below the beds of the connecting channels, is "dead water," and in that sense is not included in plaintiff's appropriation. The expert testimony presented by appellants concerning the water below the bed of the channels connecting the holes is generally to the effect that such water, in reaching points on the river below, would have to pass through sand or gravel, or both, and could not move a greater distance than about 50 feet in 24 hours; that at that rate it would be impossible for such water to move from the hole where appellants' pump is installed to the point where plaintiff's pump diverts the water in time for use during the irrigation season. The position taken by appellants seems to be that, inasmuch as such water could not reach plaintiff's pump during the irrigation season in which it is diverted, therefore plaintiff has no ground for complaint. It was also the theory of appellants' experts that at no time could all of such water be available for use at plaintiff's pump, for the reason that a large portion of it would never rise to the surface above plaintiff's point of diversion.

In view of the conclusions reached by the court, it is perhaps unnecessary to give more than a passing notice to the theories and contentions above referred to. I am, however, of the opinion that if the court was right in holding that plaintiff's second appropriation was valid, then it should make no difference whether the water diverted by appellants would reach plaintiff's pump the same year, the next year, or the year following. Appellants would have no right to divert the water until plaintiff's rights were fully supplied. If plaintiff's appropriation is valid, I know of no reason in law why it should forfeit its right thereunder merely because the water moves slowly towards its point of diversion, unless it were shown that the water pumped by appellants would reach plaintiff's pump during the nonirrigating season, and for that reason would be unavailable for plaintiff's use. However, in view of the conclusions and decree, the discussion of this question is more or less of an academic nature, and therefore should not be extended.

The effect of appellants' diversion of the water of the stream at plaintiff's pump at or about the time of the alleged wrongful diversion by appellants is testified to by plaintiff's witness Mr. East. We read from the appellants' abstract:

"I would say that approximately 5 second feet of water was flowing in Weber river at a point just above the cement dam on June 26th of this year (1919); a few days before there had been more flowing; I had been working on the dam for about two weeks, and observed that about 10 or 11 second feet had been flowing at that time; I went up the stream about 2 miles or 2½ miles above our pumping plant and I saw Mr. Charlton's pumping plant, and it was in operation at that time; after the Charlton pump was shut down I observed about 10 second feet just above the cement dam; that was the day after the restraining order."

It is unnecessary to consider the evidence at any considerable length. Witnesses for both plaintiff and appellants testified concerning the channel between the holes, and water flowing from one hole to another. In nearly every case where the matter was referred to at all, it appeared that more water flowed out of the holes than flowed in, **3** showing a gradual accumulation of water in its downward trend towards plaintiff's point of diversion. In the opinion of the court, there is no question but that, in view of the evidence, appellants' diversion of the water from what is known as Charlton's hole, where the pump is situated, interfered with the surface flow of the water at plaintiff's point of diversion, and for that reason we are compelled to hold that appellants' first alleged ground for reversing the judgment is without merit.

2. The second ground relied on by appellant is:

"If this water be regarded as a part of the flow of the river, the evidence shows that the plaintiff, Warren Irrigation Company, had only a secondary right; the prior right to seven second feet of water being in the Pioneer Land & Irrigation Company."

The testimony introduced by plaintiff shows that, by means of the restraining order procured against appellants, ten second feet of water became available for use at plaintiff's pump, whereas, while appellants' pump was in operation, there were only five. If the Pioneer Land & Irrigation Company had a primary right of only seven second feet as against

the plaintiff, there were three second feet procured by the restraining order which belonged to plaintiff in its own right, assuming that its appropriation was valid. This alone justified plaintiff's action, even if we admit the principle for which appellants contend. We cannot, however, concede that there is any merit whatever in appellant's contention. Plaintiff being an appropriator of water from the river, had at least a secondary right to the water in question, while appellants do not appear to have had any right at all, except such as is subject and subsequent to prior rights. If the Pioneer Land & Irrigation Company for any reason did not see fit to use its water on the occasion referred to, plaintiff's rights were next in order. If plaintiff committed a wrong against the Pioneer Land & Irrigation Company, we find nothing in the record to indicate that it was any concern of appellants. In any event, plaintiff, having had a secondary right, was interested in seeing that the water was not converted by a stranger, for the inevitable consequences would be to delay plaintiff in the enjoyment of its right, if it had rights which the law would protect.

3. This brings us to the third ground relied on by appellants:

"The certificate of appropriation of water issued by the state engineer to W. L. Stewart and assigned to the plaintiff, introduced in evidence as the basis of the right of the Warren Irrigation Company, was only prima facie evidence of the appropriator's right to the use of the water, and the defendants and appellants should have been permitted to introduce evidence to contradict the recitals of the certificate."

The first evidence introduced by plaintiff at the trial of the case was the certificate of appropriation to W. L. Stewart above referred to. The certificate, in form, appears to be in strict conformity to the statute under which the appropriation was made (chapter 100, § 45, Sess. Laws Utah 1903), which reads as follows:

"Upon it being made to appear to the satisfaction of the state engineer that any appropriation has been perfected in accordance with the application therefor, it shall be the duty of the state engineer to issue a certificate, in duplicate, to the party making the same, setting forth the name, and post office address of the person,

corporation or association by whom the water is to be used; the
flow per second of water to be used; the purpose for which the
water is to be used; the time during which the water is to be used
each year; the name of the stream or source from which the water
is to be diverted; the place on the stream or source where the
water is to be diverted; the priority number of the right; the date
of the appropriation; and such other matter as will fully and com-
pletely define the right of said person, corporation or association
to the use of the water. One copy of said certificate shall be filed
in the office of the state engineer, and the other copy shall be de-.
livered to the appropriator, and shall, within thirty days, be re-
corded by him in the office of the county recorder of the county
where the water is diverted from the natural stream or source. The
certificate so issued and filed shall vest in the appropriator the right
and title to the use of the water in the volume, for the purpose and
during the time mentioned therein, and shall be evidence of such
right."

From the fact that the state engineer issued the certificate
to Stewart, it must be presumed that it was made to appear
to his satisfaction that the appropriation had been perfected
in accordance with the application therefor. The quantity
of water named in the certificate is 15 cubic feet per second.

The statute above quoted purports to make the certificate
evidence of a vested right. Appellants sought to impeach the
validity of the certificate by evidence contradicting the re-
citals therein. The evidence was objected to by respondent,
and the objection sustained. The ruling of the court is as-
signed as error.

The question is, Can the certificate of appropriation issued
in pursuance of the statute to which reference has been made
be the subject of collateral attack and its force and effect
nullified and set at naught in a collateral proceeding, espe-
cially by one who was not, in any sense, a party to or inter-
ested in the proceeding which finally culminated in the issu-
ing of the certificate?

In support of their contention appellants cite the follow-
ing authorities: *Speer* v. *Stephenson,* 16 Idaho, 707, 102
Pac. 365; *Ryan* v. *Tutty,* 13 Wyo. 122, 78 Pac. 661; *Farmers'
Ind. Ditch Co.* v. *Agr. Ditch Co.,* 22 Colo. 513, 45 Pac. 444,
55 Am. St. Rep. 149; *Daley* v. *Cox,* 48 Cal. 127.

In *Speer* v. *Stephenson, supra,* the eighth paragraph of the

syllabus states the proposition upon which appellants presumably rely:

"The action of the state engineer, in deciding to cancel or in refusing to cancel a permit, is not conclusive upon the parties, and may be reviewed in the district court upon appeal, or may be questioned in a direct proceeding in the district court, and the court in considering such matter is in no way controlled or concluded by the action of the state engineer."

If appellants had been contestants of plaintiff in the proceeding before the state engineer for the water right in question, they would, undoubtedly, have had their day in court, either by appeal or by a direct proceeding to annul the certificate if it were procured by fraud. We may go further by way of illustrating our views and suggest that, if appellants had in any manner shown themselves to be interested as contemplated appropriators of the water under the state law, they might have had a right of action    4, 5 in a direct proceeding to cancel and annul the certificate of appropriation on some equitable grounds for cancellation. We have no fault to find with the doctrine enunciated in the Idaho case, nor do we think the other cases referred to are in any sense applicable to the case at bar.

Appellants, however, quote from *New Era Irrigation Co.* v. *Warren Irrigation Co. et al.*, 48 Utah at page 551, 160 Pac. at page 1197, the following language of the court:

"No assignment is made, nor does the record disclose, that the plaintiff was precluded from controverting any recital of fact contained in the certificate, or that the court, by any ruling, held or treated the certificate as conclusive evidence against the plaintiff."

It is not contended by appellants that the case determines the question now under review. On its face the excerpt quoted shows that the court, for more reasons that one, found it unnecessary to decide the question. We suggest, however, that in that case all the parties before the court were claiming under alleged appropriations made under the laws of the state relating to the appropriation of water. Appellants stand in no such relation in the instant case.

In our opinion, the question presented here should be determined by the same rules and principles which control in

cases involving the effect given to patents issued for public land by the Land Department of the United States.

In *Moore* v. *Robbins*, 96 U. S. 530, 24 L. Ed. 848, the doctrine is well stated in the second and third paragraphs of the syllabus:

"2. If there be any lawful reason why the patent should be canceled or rescinded, the appropriate remedy is by a bill in chancery, brought by the United States, but no executive officer is authorized to reconsider the facts on which it was issued, and to recall or rescind it, or to issue one to another party for the same tract.

"3. But when mistake or fraud or misconstruction of the law of the case exists, the United States, or any contesting claimant for the land, may have relief by a court of equity."

In *Smelting Co.* v. *Kemp*, 104 U. S. 636, 26 L. Ed. 875, the first and second paragraphs of the syllabus read:

"1. A patent, duly signed, countersigned, and sealed, for public lands which, at the time it was issued, the Land Department had, under the statute, authority to convey, cannot be collaterally impeached in an action at law and the finding of the Department touching the existence of certain facts, or the performance of certain antecedent acts, upon which the lawful exercise of that authority may in a particular case depend, cannot, in a court of law, be questioned.

"2. If in the issuing of a patent the officers of that Department take mistaken views of the law, or draw erroneous conclusions from the evidence, or act from either imperfect views of duty or corrupt motives, the party aggrieved cannot set up such matters in a court of law to defeat the patent. He must resort to a court of equity, where he can obtain relief, if his rights are injuriously affected by the existence of the patent, and he possesses such equities as will control the legal title vested in the patentee. A *stranger to the title* cannot complain of the act of the government in regard thereto." (Italics ours.)

At page 641 of 104 U. S. (26 L. Ed. 875), in speaking of the conclusiveness of a land patent as evidence, the court, speaking through Mr. Justice Field, says:

"It is this unassailable character which gives to it its chief, indeed its only, value, as a means of quieting its possessor in the enjoyment of the lands it embraces. If intruders upon them could compel him, in every suit for possession, to establish the validity of the action of the Land Department and the correctness of its ruling upon matters submitted to it, the patent, instead of being a means of peace and security, would subject his rights to constant and ruinous litigation."

See, also, other cases cited by respondent: *Welsh* v. *Callvert et al.*, Land Commissioners, 34 Wash. 250, 75 Pac. 871; *Plummer* v. *Brown*, 70 Cal. 544, 12 Pac. 464; *Steel* v. *Smelting Co.*, 106 U. S. 447, 1 Sup. Ct. 389, 27 L. Ed. 226.

As we understand the law applicable to this question, we are forced to the conclusion that the trial court committed no error in rejecting the evidence offered to contradict the recitals contained in the certificate of appropriation.

In conclusion: The evidence disclosed by the record clearly established the fact that the plaintiff's stockholders were in great need of the water for the irrigation of their crops at the very time appellants were diverting and applying it to their own use.

For the reasons stated, the judgment of the trial court is affirmed, at appellants' costs.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK, JJ., concur.