## MAY v. PENTON, ET AL.
(No. 1771; Nov. 21, 1932; 16 Pac. (2d) 35)

The cause was submitted for the plaintiff in error on the brief of *O. N. Gibson* and *Donald Spiker,* of Riverton, Wyoming, and *Mr. A. H. Maxwell* and *Mr. Geo. F. Dobler,* of Lander, Wyoming.

For the defendants in error there was a brief and also an oral argument by *Mr. W. E. Hardin,* of Lander, Wyoming.

Riner, Justice.

The District Court of Fremont County sustained a general demurrer filed by the defendants to the amended petition of the plaintiff, in an action brought by May, now plaintiff in error, against Penton, et al., now defendants in error. May declined to plead further and the court accordingly entered a judgment dismissing his action and for costs. These proceedings in error were brought to review that judgment, the only error assigned and relied on being the court's ruling on the demurrer and the dismissal of the cause below, as described above.

The pleading thus successfully attacked in the District Court in substance sets forth that the plaintiff May is the owner of certain real estate in Fremont County, whose description is given; that on September 6, 1921, the application of Crescent C Cattle Company for a permit to appropriate the water of Meadow Creek in said county was filed in the Wyoming State Engineer's office and recorded as No. 16225. The location of the head gate of the ditch and the description of the lands proposed to be irrigated, as given by said application, are alleged. It is then stated that, on October 29, 1926, the plaintiff filed his application in the office aforesaid for a permit to appropriate water of the State of Wyoming through the May enlargement of said Crescent C Cattle Company's ditch, said application being recorded as No. 4507; that the work required under the terms of this application was begun June 5,

1927, completed August 22, 1927, and the State Engineer notified thereof as required by law; that on October 29, 1926, plaintiff also filed in the office aforesaid his application for a permit to construct the May Reservoir and to store, for beneficial use, the unappropriated water of the State, supplied through the May enlargement of said ditch, for the lands described in permits Nos. 4507 and 17148; that this application was approved as No. 4030, the work thereunder commenced June 15, 1927, and the State Engineer duly notified to that effect; that the time for completing this reservoir has been extended by that officer to December 31, 1933; that on October 29, 1926, plaintiff additionally filed in the office aforesaid an application for a permit to appropriate State water through the May enlargement of said ditch, the said reservoir, and the May outlet ditch, for an additional supply of water for the use of certain lands described therein and which are listed, this application being recorded as No. 17418; that the work thereunder was commenced and completed within the time fixed.

The pleading then avers that on November 7, 1925, proof of the completion of the ditch provided for in application No. 16225 aforesaid and of the application of the water to beneficial use thereunder was submitted to the State Board of Control and its order approving the same duly made and recorded; that "by the proof submitted to said Board of Control it was fraudulently made to appear that water had been applied to beneficial use under said application upon all the lands therein described, whereas in truth and in fact the total area to which said water had been beneficially applied did not exceed 8 irrigable acres."

It is thereupon charged that said order was made without notice to plaintiff, who knew nothing of it and who did not "discover the perpetration of the fraud until the season of 1929"; that, insofar as said order was unsupported by proof, plaintiff never acquiesced in same; that the

water supply of Meadow Creek appropriated by the permits aforesaid is insufficient to meet the lawful requirements of the appropriators thereunder and that defendants, as successors in interest under said permit for the Crescent C Cattle Company ditch, claim the full amount of the water appropriation thereby authorized and the water commissioner is enforcing such claim to plaintiff's irreparable injury.

The amended petition further avers that, by reason of the fraudulent proof thus submitted to secure the certificate of appropriation, the defendants are only entitled to the water thereunder to the exent to which the application to beneficial use had actually been made at the time the proof as aforesaid was submitted and approved by said Board of Control. The prayer of the pleading is that the rights of the several parties be determined and defendants restrained from claiming any water, under said permit No. 16225, in excess of the allowance for the area to which the water had, in fact, been actually applied to beneficial use at the time such proof was submitted.

The question thus presented for decision is whether an order of the Board of Control of the State of Wyoming, allowing an appropriation of water, may be collaterally attacked for alleged fraud, consisting in the submission of asserted false proofs to that body by the party in whose favor the order is made, such attack being made merely by one who, at the time of the making of the order, was an utter stranger to the proceeding and entirely without interest in either the land or the water affected by such order. This question we have little hesitancy in answering in the negative.

This court, speaking of the nature of the proceedings before the Board of Control and its action in Farm Investment Co. v. Carpenter, 9 Wyo. 110, 61 Pac. 258, 267, 50 L. R. A. 747, 87 Am. St. Rep. 918, said:

"The proceeding is one in which a claimant does not obtain redress for an injury, but secures evidence of title to a valuable right—a right to use a peculiar public commodity. That evidence of title comes properly from an administrative board which, for the State in its sovereign capacity, represents the public, and is charged with the duty of conserving public as well as private interests. The board, it is true, acts judicially, but the power exercised is quasi judicial only, and such as under proper circumstances may appropriately be conferred upon executive officers or boards.

"The jurisdiction bears some resemblance to that of the land department of the government concerning the disposal of the public lands. That department is not regarded as a court, or as a branch of the judicial department; nor is its jurisdiction upheld upon the basis of any authority residing in Congress to establish courts. It is considered as an administrative department, and its powers are held to be quasi judicial only. Orchard v. Alexander, 157 U. S. 372, 15 S. Ct. 635, 39 L. Ed. 737. * * * It may be assumed that, in the absence of fraud or collusion, any matter actually and legally determined by the final decree of the board becomes *res judicata,* at least as to the public, and the parties participating in the proceedings."

The foregoing language was used long before Sec. 1, Ch. 67, Laws 1901, was enacted, (now § 122-135, Wyo. Rev. St. 1931) which reads:

"The final orders or decrees of the state board of control, in the proceedings provided by law for the adjudication and determination of rights to the use of the public waters of the state, shall be conclusive as to all prior appropriations, and the rights of all existing claimants upon the stream or other body of water lawfully embraced in the adjudication, subject, however, to the provisions of law for re-hearing in such proceedings and for the re-opening of the orders or decrees therein and for appeals from such orders or decrees."

It is well established that the rule against collateral impeachment of judicial decisions applies to the determinations of officials and boards of officers who, although not

constituting a court, are called upon to act judicially in matters of administration. 34 C. J. 519, § 826 and cases cited. Warren Irr. Co. v. Charlton, 58 Utah 113, 197 Pac. 1030.

Stated in another way by Mr. Justice Miller in Johnson v. Towsley, 13 Wall. 72, 20 L. Ed. 485, the principle is:

"When the law has confided to a special tribunal the authority to hear and determine certain matters arising in the course of its duties, the decision of that tribunal, within the scope of its authority is conclusive upon all others."

This principle, as is recognized in Farm Investment Co. v. Carpenter, supra, and by the opinion of Justice Miller also, is subject to the right of the courts exercising equitable powers to relieve for fraud and mistake, as to both judicial and executive action.

The rule, then, is that a judgment obtained by fraud may be impeached by the parties to it or those in privity with them, in a direct proceeding for that purpose. Davidson v. Real Estate & Investment Co., 226 Mo. 1, 125 S. W. 1143, 136 Am. St. Rep. 615, Id., 249 Mo. 474, 155 S. W. 1. But it is also generally stated to be the rule that parties to an action and parties in privity with them cannot collaterally impeach a judgment on the ground of fraud. 2 Freeman on Judgments, §336; DeGraw v. DeGraw, 7 Mo. App. 121; State ex rel. Klotz v. Ross, 118 Mo. 23, 23 S. W. 196; Hart v. Hunter, 114 S. W. 882, 52 Tex. Civ. App. 75; Morris v. Sadler, 74 Kan. 892, 88 Pac. 69; Reed Bros. v. Nicholson, 158 Mo. 624, 59 S. W. 977; Johnson v. Realty Co., 167 Mo. 325, 66 S. W. 933. It has been held, however, that a judgment may be impeached in a collateral attack on the ground of fraud in its procurement by a stranger to it. This is an exception to the general rule that a judgment regular on its face cannot be attacked collaterally and applies to cases where the stranger

attacking the judgment is prejudiced by it in respect to some pre-existing right. This exceptional doctrine is ordinarily applied where there is a case of collusive judgment in fraud of creditors. A stranger whose right accrues to him after the rendition of the judgment obtained by fraud cannot attack it on that ground in a collateral proceeding. Stoutimore v. Clark, 70 Mo. 471; Hogg v. Link, 90 Ind. 346; Johns v. Pattee, 55 Ia. 665, 8 N. W. 663; 2 Freeman on Judgments, 4th Ed., § 335; Githins v. Barnhill, 184 S. W. (Mo. App.) 145.

In Hogg v. Link, supra, the court said:

"Fraud in the procurement of the judgment is an extrinsic and collateral fact, and constitutes ground for a direct attack upon the judgment by a party thereto, by an application corresponding to an original bill in equity."

The decision quotes and relies upon the language of Chancellor Kent in French v. Shotwell, 5 Johns, Ch. 555, as follows:

"If a judgment was fraudulent by collusion between the parties to it, on purpose to defraud a subsequent purchaser, the case would present a very different question. But if the judgment was fraudulent only as between the parties, it is for the injured party alone to apply the remedy. * * * Feuds and litigation would be interminable, if any distinct purchaser of distinct parcels of land, affected by a judgment, existing, and known when they became interested, could overhaul the judgment upon an allegation of usury, extortion or fraud, practiced upon their principal, the vendor, when he, himself chooses to acquiesce in the alleged injury, or has expressly waived all complaint. It is stated to have been a principle of the common law, that a fraud could only be avoided by him, who had a prior interest in the estate affected by the fraud, and not by him who, subsequently to the fraud, acquired an interest in the estate."

This doctrine is recognized by the Supreme Court of the United States in the case of attacks upon patents issued by the United States Land Office, for in Burke v. Southern Pacific R. R. Co., 234 U. S. 669, 34 S. Ct. 907, 916, 58 L. Ed. 1527, we find the court saying:

"Of course, if the land officers are induced by false proofs to issue a patent for mineral lands under a non-mineral-land law, or if they issue such a patent fraudulently or through a mere inadvertence, a bill in equity, on the part of the Government, will lie to annul the patent and regain the title, or a mineral claimant who then had acquired such rights in the land as to entitle him to protection may maintain a bill to have the patentee declared a trustee for him; but such a patent is merely voidable, not void, and cannot be successfully attacked by strangers who had no interest in the land at the time the patent was issued and were not prejudiced by it. Colorado Coal & Iron Co. v. United States, 123 U. S. 307, 313; 8 S. Ct. 131, 31 L. Ed. 182, 185; Diamond Coal Co. v. United States, 233 U. S. 236, 239; 34 S. Ct. 507, 58 L. Ed. 936; Germania Iron Co. v. United States, 165 U. S. 379; 17 S. Ct. 337, 41 L. Ed. 754; Duluth & Iron Range Railroad Co. v. Roy, 173 U. S. 587, 590; 19 S. Ct. 549, 43 L. Ed. 820, 822; Hoofnagle v. Anderson, 7 Wheat. 212, 214-5, 5 L. Ed. 437, 438."

Under these authorities, it is not difficult to reach the conclusion already indicated concerning the question involved in this case. We consider that the doctrine announced by the authorities quoted from above, although they deal with the rights of a stranger concerning a judgment obtained by fraud where he has no pre-existing right affected thereby, is directly applicable, as a matter of logic, to the situation disclosed in the case at bar. It is apparent from the amended petition that May's water rights arose long after the order of the Board of Control, allowing the Crescent C Cattle Company's appropriation of water, was made. When he initiated his own rights, he necessarily knew of the existence of the order in question because he was then dealing with the matter of an enlarge-

ment of a ditch through which the appropriation allowed by the order of the Board of Control attacked was made. When that order became operative he had no right which was affected by it and cannot now complain on the score of rights subsequently acquired. It is doubtless true that the state or any party possessing rights, at the time the order was promulgated, which were injuriously affected thereby, could, in a proper proceeding, have relief in the courts if fraud was established in the procurement of the order. But neither they nor their rights are here in this case.

What has been said is based upon the assumption that fraud and its discovery has been properly pleaded herein on the part of the plaintiff, a matter not at all clear. We have not found it necessary, either, to discuss the additional element appearing in the case, that the action was brought against parties who, so far as this record shows, had nothing to do with the original Crescent C Cattle Company's water appropriation, No. 16225, but are merely successors in interest; i. e., purchasers from the original applicant.

The judgment of the District Court of Fremont County should be affirmed.

*Affirmed.*

KIMBALL, Ch. J., and BLUME, J., concur.